[Civ. No. 2034.   Third Appellate District.—September 22, 1919.]

YOLO WATER AND POWER COMPANY (a Corporation), Petitioner, v. THE SUPERIOR COURT OF LAKE COUNTY et al., Respondents.

[1] PROHIBITION—PLEADING—SUFFICIENCY OF COMPLAINT.—The question of the sufficiency of a complaint to state a cause of action cannot be tested on an application for a writ of prohibition. Its sufficiency as a pleading is to be determined by the court in which it is filed.

[2] INJUNCTION — MAGNITUDE OF INTERESTS INVOLVED — EFFECT ON POWERS OF TRIAL COURT.—While the amount of damages that would accrue should a preliminary injunction be issued in a given case is a proper matter for the consideration of the lower court in exercising its discretion in granting or refusing to grant the temporary injunction, the size of the interest involved is not a factor in determining the power of such court to hear and decide the matter.

[3] ID.—EXISTENCE OF GOOD DEFENSE—JURISDICTION.—The existence of facts constituting a good defense on the merits to an application for a writ of injunction does not oust the court in which such action is pending of the power to hear and decide the case.

[4] JURISDICTION—UNAUTHORIZED SUIT—REMEDY OF ONE AGGRIEVED.— If the district attorney, or anyone else, brings an action that the law does not permit him to bring, the court in which it is brought has jurisdiction still to dispose of it. The proper procedure of the one aggrieved is by motion to dismiss, and not by application for a writ of prohibition.

[5] ID.—JURISDICTION OF SUPERIOR COURT—POWER OF LEGISLATURE TO TAKE AWAY.—The jurisdiction of the superior court is conferred by the constitution and cannot be taken away by any act of the legislature. Jurisdiction is the power to hear and determine, and does not depend upon the regularity of its exercise, nor upon the rightfulness of the decision made by the court.

[6] ID.—INJUNCTION PROCEEDINGS AGAINST PUBLIC UTILITIES—EFFECT OF CONSTITUTIONAL PROVISIONS.—The superior court has jurisdiction to hear and determine a suit brought in the name of the people against a public utility to enjoin it from committing a public nuisance. The equity powers of that court, as conferred by section 5 of article VI of the constitution, are not limited by the provisions of section 23 of article XII of the constitution, which states what are public utilities and provides for their control and regulation by the Railroad Commission.

[7] ID.—POWER OF RAILROAD COMMISSION TO AVAIL ITSELF OF COURT PROCESSES — NOT INCONSISTENT WITH RIGHT IN OTHERS.—The powers conferred by the constitution upon the Railroad Commission to supervise and regulate public utilities and to bring suits to enforce its orders and compel public utilities to obey the law is not inconsistent with the power conferred upon superior courts to entertain injunction suits instituted by others than the commission against the public utilities. This express power to avail itself of court processes and writs was conferred upon the commission so that its power in this regard might not be questioned in any litigation.

APPLICATION for a Writ of Prohibition to prevent the Superior Court of Lake County and M. S. Sayre, Judge thereof, from proceeding to hear and determine a petition for an injunction. Writ denied.

The facts are stated in the opinion of the court.

C. E. McLaughlin, C. P. McLaughlin, Arthur C. Huston, R. B. McMillan and Theodore A. Bell for Petitioner.

H. B. Churchill and Robert Duncan for Respondents.

THE COURT.—The opinion filed in this matter on the seventh day of August, 1919, ruling upon the demurrer to the petition is vacated and set aside and the following opinion of the court in said matter is hereby substituted therefor:

The application is for a writ of prohibition to prevent said court and the judge thereof ''from hearing, entertaining,

passing upon, proceeding with, trying and deciding'' any and all matters and issues in a certain action pending in said court wherein the people of the state of California is plaintiff and the said Yolo Water and Power Company is defendant. The petition herein shows that said company constitutes a public utility, engaged in the sale, rental, and distribution of water for irrigation; that in pursuance of said purpose it is diverting and distributing the waters of Clear Lake flowing down Cache Creek for the irrigation of certain farming neighborhoods in the counties of Yolo, Colusa, and Solano, amounting to more than two hundred thousand acres; that said lands are owned by several hundred different proprietors and are planted and devoted to various agricultural products; that artificial irrigation is needed for the proper growth and maturity of these different crops; that there is no other source from which sufficient water can be obtained to irrigate these lands; that for the purpose of conserving, storing, and distributing said waters said petitioner has constructed a large concrete dam across Cache Creek, a natural outlet of said Clear Lake, at a point just where the waters of Clear Lake are discharged into said Cache Creek, and has incurred other expenses, in the aggregate of over two million dollars, for the improvement and development of its irrigation system, the acquisition of property and other purposes connected with the scheme for which the company was incorporated and is being operated.

It further appears that on the third day of July, 1919, the district attorney of Lake County filed a complaint in the superior court of said county in the name of the people of the state of California against petitioner, in which it alleged that the defendant therein has committed, and is about to commit, a public nuisance in taking said waters from said Clear Lake, and the plaintiff prayed for the issuance of a preliminary and, also, for a final injunction ''restraining and enjoining said defendants from building any dam across the arm or slough of Clear Lake at the point where the pumps of said defendant are now located, or any other point in said arm or slough, and from dredging or deepening or widening said slough or arm of said lake, or from lowering Grigsby riffle at the end of said arm or slough, and from drawing off the waters of said lake any faster than the same would naturally flow therefrom.'' Notice was given

petitioner for the hearing of a motion for the issuance of said preliminary injunction on the eighteenth day of July, and it is alleged that said court and the judge thereof will proceed to hear, entertain, and determine said motion, and that, if said injunction be granted, the petitioner will be unable to carry on its business and will be unable to supply water for the irrigation of the lands within its system, resulting in the destruction of crops and entailing a loss thereby to the owners of over a million dollars.

It further appears that during the year 1918 the government of the United States, acting through its food commission, urged, advised, and requested many persons producing crops of rice to increase the acreage of land devoted to such production in order to supply the needs of the government of the United States and its allies in the war with Germany and other central powers; that in pursuance of said advice more than ten thousand acres of land subject to irrigation from petitioner's system were planted in rice with the understanding that said food commission would take all necessary steps to secure water for the irrigation of said lands, and to this end, at the instance of said food commission, the Railroad Commission of the state of California directed and permitted petitioner to install a pumping plant and system which would enable it to pump water from Clear Lake to its canals, ditches, aqueducts, and other utilities for the purpose of supplying sufficient water for the irrigation of said ten thousand acres of rice to such an extent that the level of said lake would be and was reduced to more than 1.9 feet below the low-water mark thereof; that as a result of this reduction it became necessary to refill said lake to the ordinary low-water mark before any water would, without pumping, be available for distribution and sale to said persons during the irrigation season of 1919. It further appears that this would have been supplied by the ordinary rainfall if the seasons had been normal, but that in consequence of the unusual lack of rain in the years 1917, 1918, and 1919, it was necessary for petitioner to use pumps to supply the water for the irrigation of said lands and thereby lower the surface of the lake about twelve inches below the low-water mark of said lake. It further appears that at the time the owners of the land devoted to rice culture were preparing their lands for planting rice, it was believed that there would

be sufficient water to supply petitioner's system during the year 1919 without the necessity of resorting to pumping from said lake, but after said persons had made preparation to plant they were advised and informed that there would not be sufficient water to irrigate the rice without pumping, and thereupon said persons consulted and conferred with the Railroad Commission and with petitioner, and said Railroad Commission issued a letter permitting and directing said petitioner to pump water from said Clear Lake during the year 1919 for irrigation of said land, should such pumping become necessary in order to irrigate and mature crops on the lands supplied with water from the system of petitioner, and they also conferred with the board of supervisors of Lake County, and the members thereof, and were informed and lead to believe that there would be no objection to, nor interference with, pumping water necessary to mature and irrigate their crop during the year 1919.

The foregoing recital of the allegations of the petition herein, though not complete, is deemed sufficient to point the application of the legal principles upon which the parties hereto rely. It may be stated that the questions for our determination arise from said petition and a general demurrer thereto.

An opinion was filed by this court and an order entered overruling the demurrer to the petition and directing that an alternative writ issue returnable before this court on the fifteenth day of September, 1919. In the meantime respondents filed a petition for a rehearing, which was denied. In the opinion filed denying the petition for a rehearing, we said:

"The order made in overruling the demurrer is obviously not a final judgment in the case and respondents will have an opportunity, upon the return of the alternative writ, not only to traverse any and all allegations of the petition, but also to present whatever views they may desire upon the sufficiency of the petition itself. We assure respondents that the whole matter will be re-examined in the light of all the reasons and authorities that may be presented by counsel on both sides."

The case now stands submitted for final consideration and decision and we avail ourselves of the opportunity to re-examine the entire controversy. Before proceeding to a

discussion of the merits of the case it is deemed proper to dispose of some matters that seem to be collateral to the real issues involved.

1. In the argument of counsel for petitioner much space is occupied in an analysis of the allegations of the complaint filed in the superior court of Lake County, the object apparently being to show that it does not contain sufficient facts as the basis for equitable relief.

[1] The question of the sufficiency of the complaint to state a cause of action cannot be tested on an application for a writ of prohibition. Its sufficiency as a pleading is to be determined by the court in which it is filed.

[2] 2. The amount of damages that would accrue to petitioners and to the land owners it is serving with water, should a preliminary injunction be issued, is a proper matter for the consideration of the lower court in exercising its discretion in granting or refusing to grant the temporary injunction, and, doubtless, will be given its full and proper weight and force in reaching a decision, but the size of the interest involved is not a factor in determining the power of the superior court to hear and decide.

3. It is alleged in the petition that the Railroad Commission authorized the petitioner to do the very acts of which plaintiff is now complaining, and it is argued that a public nuisance cannot exist in acts that are warranted by law, and, therefore, petitioner should have the writ asked for.

If it be true in fact that the Railroad Commission authorized the acts complained of, and if it be the law that such authorization prevents the acts from becoming a nuisance, then petitioner has a good defense to be presented in the superior court.

As to whether the Railroad Commission could lawfully authorize the acts to be done and whether such authorization would be a defense, we neither express nor intimate any opinion. All we decide is that these are matters for the consideration of the superior court, uninfluenced by any expression in this opinion.

[3] The existence of facts constituting a good defense on the merits to an application for a writ of injunction does not oust such court of the power to hear and decide the case. With these matters disposed of, we now address ourselves to the merits of the case.

### I.

The real gravamen of the petitioner's complaint is not that the superior court of Lake County has not equity jurisdiction to hear and decide an injunction suit against a public utility, but that the district attorney has no power conferred upon him by law to institute the action. This is apparent from the opening sentence of his written argument, wherein he says: "Petitioner earnestly insists that section 751 of the Code of Civil Procedure and section 4156 of the Political Code, giving the district attorney of a county power to commence an action in the name of the state of California to abate a public nuisance, were repealed, as far as public utilities are concerned, by section 23, article XII, of the constitution as amended in 1911 and 1914 and the Public Utility Act of 1911 and 1915."

The power of the district attorney to commence an action, and the power of the court to dispose of it after it has been begun, are entirely distinct matters, and to mingle them in the discussion but leads to confusion of thought. A law taking away from a party the power to start a suit is not a law diminishing the powers conferred upon the court by the constitution and cannot possibly have that effect. [4] If the district attorney, or anyone else, brings an action that the law does not permit him to bring, the court in which it is brought has jurisdiction still to dispose of it, and anyone aggrieved has his proper remedy in the court in which it is pending by motion to dismiss. This has always been recognized as the proper procedure instead of applying for a writ of prohibition.

Thus, in *People* v. *Stratton*, 25 Cal. 242, the attorney-general of the state brought a suit to have declared void certain patents granted by the Governor of the state to the defendants. The defendants, believing that the attorney-general was not authorized to institute such action, made a motion to dismiss the same upon that ground. The motion was granted by the district court and an appeal taken therefrom to the supreme court. This seems throughout to be recognized as the proper practice in a case where it is claimed the law did not authorize the plaintiff to bring the action.

In *Bishop* v. *Superior Court*, 87 Cal. 233, [25 Pac. 437], the court said: "Upon this proposition, the case of *State* v.

*Valliant*, 100 Mo. 59, [13 S. W. 398], seems to be much in point. We quote the statement as to what the case was, and as to what the court said on the subject, from petitioner's reply brief: 'A certain railroad company sought to condemn part of the track of another, by proceedings taken in the circuit court of St. Louis. The defendant company applied for a writ of prohibition, on the ground that the statutes and ordinances of St. Louis did not authorize the exercise of jurisdiction in eminent domain there invoked in favor of the company invoking it.' Upon the application for prohibition, the court held 'that the circuit court of St. Louis had jurisdiction of the proceedings to appropriate property to public use, in the exercise of the right of eminent domain, in a proper case, is unquestioned and unquestionable; but the substance of the petitioner's contention here, as well as the ground on which they, as defendants, resisted the proceedings in the circuit court, is that the statutes and ordinances do not authorize the exercise of such jurisdiction in behalf of the Southern Railroad Company. We are of the opinion that the question thus raised is not a proper one for our decision upon this application.' "

## II.

"Has the superior court of the state jurisdiction to hear and determine a suit brought in the name of the people of the state of California against a public utility to enjoin it from committing a public nuisance, said suit being instituted by the district attorney of the county at the request of the board of supervisors thereof?"

[5]  "The jurisdiction of the superior court is conferred by the constitution and cannot be taken away by any act of the legislature." (*City of Tulare* v. *Hearne*, 126 Cal. 226, [58 Pac. 530].) "The jurisdiction of any court is the power to hear and determine, and does not depend upon the regularity of its exercise, nor upon the rightfulness of the decisions made by the court." (*Lange* v. *Superior Court*, 11 Cal. App. 1, [103 Pac. 908].) The constitution of California, in section 5 of article VI, provides: "The superior court shall have original jurisdiction in *all* cases in equity."

The suit pending in the superior court of Lake County against the petitioner for an injunction is a suit in equity, and that court has jurisdiction to hear and determine it,

*unless it has been divested of such jurisdiction by some pro-vision of the state constitution.*

[6] Petitioner claims that the power of the superior court to hear and determine this particular suit against a public utility has been taken away from it by virtue of certain provisions found in section 23 of article XII of the state constitution and of section 75 of the Public Utility Act, [Stats. 1915, p. 115].

Section 23 of article XII of the constitution states what are public utilities, and is broad enough to embrace petitioner, and as to such declares them to be "subject to such control and regulation by the Railroad Commission as may be provided by the legislature," and it further provides: "The Railroad Commission shall have and exercise such power and jurisdiction to supervise and regulate public utilities, in the state of California . . . as shall be conferred upon it by the legislature, and the right of the legislature to confer powers upon the Railroad Commission respecting public utilities is hereby declared to be plenary and to be unlimited by any provision of this constitution. From and after the passage by the legislature of laws conferring powers upon the Railroad Commission respecting public utilities, all powers respecting such public utilities vested in boards of supervisors, or municipal councils, or other governing bodies of the several counties, . . . in this state, or in any commission created by law and existing at the time of the passage of such laws, shall cease so far as such powers shall conflict with the powers so conferred upon the Railroad Commission."

We discover nothing in this constitutional provision that limits in any way the equity powers of the court as conferred by section 5 of article VI of the constitution.

The phrase "all powers respecting public utilities vested in boards of supervisors or other governing bodies shall cease so far as such powers conflict with the powers conferred upon the Railroad Commission" does not purport to nor does it lessen the jurisdiction of the court to hear and determine this injunction suit. Courts are not "governing bodies" of counties within the sense in which that term is used in the constitution, nor are they classed as "bodies." The section of the constitution declares that "the right of the legislature to confer additional powers upon the Railroad Commission is plenary and unlimited by any provision of the constitution."

In pursuance of the powers given to it by section 23 of article XII, the legislature passed a Public Utility Act, and section 75 of this act provides that if a public utility is doing or about to do anything contrary to law, or any rule or requirement of the commission, it shall direct the attorney of the commission to commence an action in the proper court, in the name of the people of the state, for the purpose of having such violation or threatened violation stopped or prevented either by *mandamus* or injunction.

It is claimed that this section gives the commission the right and power to bring suits for injunction against public utilities, and that such power so vested in it is inconsistent with the power of a county to institute such suit. With this conclusion we are unable to agree. The purpose and intent in enacting section 75 is obvious.

[7] The Public Utility Act invests the board of railroad commissioners with large powers in the control of public utilities, and gives it power to fine and punish for contempt. But the commission is not a court and has not complete court machinery. It was seen that cases might arise where punishments for contempt and fine would not accomplish the objects sought, that writs of *mandamus* and injunction might be needed, and such writs the commission had no power to issue. It might become necessary for it to avail itself of the equity powers of the courts. Without express authority granted by the legislature to so do, the question of its right to bring suit might be raised in any litigation arising. Anticipating such contingency, express power was conferred upon the commission to avail itself of court processes and writs, so that its power in this regard might not be questioned. This grant of a right to the commission to bring injunction suits is not at all inconsistent with the continuance of said right in others who may feel aggrieved by the acts of a public utility.

Powers conferred by the constitution upon the Railroad Commission to supervise and regulate public utilities and to bring suits to enforce its orders and compel public utilities to obey the law is not inconsistent with the power conferred upon superior courts to entertain injunction suits instituted by others than the commission against public utilities. To so hold will not create any conflict between the courts and the commission, because in all such suits the courts will be

bound and guided and controlled in all respects in entertaining and deciding or dismissing them as much by section 23 of the constitution and the Public Utility Act as by any other provision of the law.

These views are further strengthened by the language of section 74 of the Public Utility Act, wherein it is said: "This act shall not have the effect to release or waive any right of action by the state, the commission, or any person or corporation for any right, penalty or forfeiture which may have arisen or accrued or may hereafter arise or accrue under any law of this state." This section would seem to put a fitting ending to all discussion.

The demurrer to the petition for a writ is sustained and the writ denied.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 21, 1919.

'All the Justices concurred.