[S. F. No. 13983.   In Bank.—November 28, 1930.]

CHARLES DANKERT, Petitioner, v. OROVILLE–WYANDOTTE IRRIGATION DISTRICT (a Public Corporation), Respondent.

George F. Jones, Douglas Brookman and Sanborn, Roehl, Smith & Brookman for Petitioner.

R. A. Leonard and Chickering & Gregory for Respondent.

THE COURT.—Application for a writ of *mandamus.* The recitation of facts is taken from the petition:

Respondent Oroville-Wyandotte Irrigation District is now and since July 8, 1919, has been a public corporation and irrigation district organized under the laws of this state

for the purpose of providing water for the irrigation of certain lands situate in the county of Butte. Said district is not subject to the regulatory powers of the state Railroad Commission. (*Henderson* v. *Oroville-Wyandotte Irr. Dist.*, 207 Cal. 215 [277 Pac. 487].) There also existed in the immediate vicinity of respondent district two other public utilities, to wit, Palermo Land and Water Company and South Feather Land and Water Company, organized for the purpose of distributing for sale water to lands within their said districts. Our concern is with the Palermo Company and not with the South Feather Company. Petitioner Charles Dankert is the owner of lands within said Palermo Land and Water Company's boundaries. These last-named utilities were under the regulatory power of the state Railroad Commission, and the owners thereof could not sell said systems or plants without first having secured from the Railroad Commission an order authorizing them to do so. (Sec. 51a, Public Utilities Act [Stats. 1915, p. 149].) Both of said public utilities, therefore, applied to the Railroad Commission in 1922 for authority to sell their respective plants to said Oroville-Wyandotte Irrigation District, the latter district joining in said applications as purchaser. The applicants alleged in their petitions that said transfers would benefit the public and would result in an increased and more dependable water supply for the area served and would provide irrigation service to a larger area than was then served at probably a lower cost. The purchase price, to wit, $200,000, to be paid to each of the selling utilities by the respondent, was mutually agreed upon by the respective parties. Hearings were accordingly held as provided by law. The district's boundaries originally contemplated the inclusion of the lands then served by the two utilities, but as only a few of the owners of such lands expressed a desire to join the proposed district a revision of the boundaries was made excluding the lands of those water users who did not elect to join the district. At the first hearing held by the commission eighty-two of the water users of the Palermo Company, who had not joined the district, including petitioner, protested against the transfer, alleging that if the authority to transfer was granted they would be without the jurisdiction of the Railroad Commission and consequently

without adequate protection as to future rates and service. They requested as a condition of the transfer that respondent district be required to give guaranties as to future rates to be charged for the use of water and the service to be rendered and also insisted that some provision be made permitting the water users to join said Irrigation District. Several conferences were held in which representatives of the Railroad Commission met with the protestants and representatives of the respondent district and finally a proposal which was agreed to by the parties in interest was adopted, and which the Railroad Commission caused to be made a record in the proceeding, as a resolution by the board of directors of respondent district, and was intended to have the effect of an agreement.

Said resolution declares that the protestants withdrew their protests against said transfer in consideration of the respondent district agreeing to enter into contracts with each of said protestants and water users accepting the offer as therein made within six months from the date of said resolution. The quantity of water to which each of said water users would be entitled per acre was therein fixed, as was the rate of twenty-five cents per miner's inch continuous flow per day of twenty-four hours, with a minimum charge of $5 per acre per year until January 1, 1928. It was further provided that if at "any time five years" after the first construction work has been started by said respondent any of the water users of said Palermo Company shall make a legal application to have their lands included in the Oroville-Wyandotte Irrigation District and said application shall be rejected by said district, then and in that event, the said water user shall pay the same charge for water furnished to his land as is paid for water by the water users or land owners within said district. Said resolution provided that the rates above specified should not be raised after said January 1, 1928, and also contained the further provision that should the charge paid for water by consumers within said district exceed the sum of twenty-two cents per miner's inch, then and in such event the then outside users of water should pay the same charge as paid by land owners or consumers of water within said district. It was further provided that all the existing rights of said water users should

continue and whatever rights and benefits that were conferred by said resolution or agreement were in addition to those they then possessed. Should any of the then water users at any time have their lands included within respondent district, said resolution or agreement was to become null and void as to them.

The district assumed the obligation of the Palermo Land and Water Company to furnish water to the purchasers of land from said Palermo Company, as provided in its contracts of sale, but which had not for various reasons received water service. The Railroad Commission thereupon, on December 8, 1922, made its order that the applications for transfer be granted, subject to the condition that the then users of water of said water companies and those persons or firms desiring to become users within ten years from the date of said order should receive service from said Oroville-Wyandotte Irrigation District at the rates and under the conditions recited in application 8000 and application 8018—applications of said Palermo Company and South Feather Company, respectively, to sell said plants to respondent Irrigation District—and in the resolutions of the directors of said respondent Irrigation District, the material parts of which are above set forth. No other orders, records or documents bearing upon the commission's action are before us in this proceeding.

As grounds of justifying the issuance of the writ of *mandamus* petitioner alleges that on January 20, 1928, the board of directors of respondent district fixed the rate to be charged for water used by petitioner and other users of water outside of said district at $7.50 per acre-foot and the equivalent rate for water users within said district at $5 per acre-foot for the year 1928; and that J. C. Henderson, one of said outside users of water, filed with the Superior Court of the County of Butte a complaint for declaratory relief (sec. 1060 et seq., Code Civ. Proc.), seeking a determination of the rights and obligations of himself and respondent, including the rate to be paid for the use of water. A demurrer was sustained to the complaint without leave to amend. An appeal was taken from the judgment thus entered and the ruling of the trial court was reversed. (*Henderson* v. *Oroville-Wyandotte Irr. Dist.*, 207 Cal. 215

[277 Pac. 487].)  Said action was thereafter tried in said Superior Court of the County of Butte and judgment went for plaintiff.

An appeal was taken in that case and if affirmed it will establish the contention of petitioner and all others concerned in the subject of litigation, both as to the power of the Railroad Commission to regulate respondent district in fixing water charges in the premises and as to the proper interpretation of the word "charge" as used by the commission in dealing with the subject matter.  The issues being identical and admittedly arising out of the same state of facts, any judgment rendered in favor of or against plaintiff Henderson, who belongs to the same class as does petitioner, who is acting in a representative capacity, in an action against the same defendant would certainly become *res judicata* as to petitioner.  Judgment was rendered in the Henderson case on June 7, 1930.

The immediate grounds upon which petitioner bases his claim for this extraordinary writ is that on January 31, 1930, respondent fixed a rate for petitioner and other users of water outside the district at $10 per acre-foot and a rate for users within the district at $5 per acre-foot for the year 1930.  The total demand amounted to $170.40.  On June 14, 1930, petitioner tendered $85.20, one-half of said sum of $170.40, and demanded a receipt in full, which demand was refused.  Whether the whole amount of the demand was thereafter paid or whether petitioner was actually denied the use of water by reason of failure to pay the full amount of the charge does not pointedly appear.  This question, however, is not important in view of the demand.  Petitioner, for himself and on behalf of those whom he represents, alleges the ability and willingness of said parties to pay a water charge of $5 per acre-foot, but alleges any sum above that amount to be unlawful "in so far as it exceeds the rate of $5 per acre-foot charged for the use of water to lands within the boundaries of respondent district."  The petition contains no allegation that the charge is not a fair, reasonable or just charge as to said outside users based on the cost of supply and maintenance, but it is resisted on the ground that it is in violation of the rights of petitioner and others, as prescribed by the Railroad Commission as a condition precedent to its order consenting to the transfer.  The

contention of petitioner is that he is entitled to water at the same rate per unit of water delivered as respondent charges members of the irrigation district.

It appears from the brief opinion of the learned judge who tried the Henderson case that respondent imposes charges for water service upon members of the district in the form of a water charge and also in the form of a tax; petitioner claims that in such circumstances the charge to him cannot exceed the water charge exclusive of the tax. It is the claim of respondent, however, that the charge paid for water service by members of the district in the form of a tax added to the $5 per acre-foot charge would far exceed the charge of $10 per acre-foot assessed against petitioner and those whom he represents. The powers of the Railroad Commission in the premises, the question of contractual rights growing out of the proceedings which culminated in the order of transfer and a number of other important questions which should receive the fullest consideration, render it inexpedient that we should arrest the appeal already taken and attempt to decide the relative rights of the parties to this proceeding upon a very incomplete record. The record in the Henderson case, which went to judgment approximately six months ago, is not yet on file in this court, although it is suggested that it, together with the transcript, has been completed. We have been unable to locate it. Besides, the respondent has not consented that the record in that case should be accepted as the record in the instant case. Moreover, should we sustain the demurrer in the instant case, petitioner would be put to the task of amending his petition and if he should finally pass a demurrer, it is highly probable that a reference would be necessary. On the other hand, if the appeal which was taken several months ago is prosecuted with but ordinary diligence, the matter should come to this court within a short time and if the case is one where the rights of the parties would greatly suffer by awaiting its turn upon the calendar this court has the power to advance said cause upon a sufficient showing.

For the reasons herein set forth the petition for the writ is denied and the alternative writ is discharged.