[S. F. No. 14744.   In Bank.—May 31, 1933.]

J. E. RUTHERFORD, Petitioner, v. OROVILLE–WYAN-
DOTTE IRRIGATION DISTRICT (a Public Corpora-
tion), Respondent.

George F. Jones and Douglas Brookman for Petitioner.

Raymond A. Leonard and Chickering & Gregory for Respondent.

Wright & McKee, Leroy A. Wright and C. M. Monroe as *Amici Curiae* on Behalf of Respondent.

CURTIS, J.—Petitioner instituted this *mandamus* proceeding on behalf of himself and others to compel respondent district to issue to petitioner a receipt in full for water delivered to his lands upon the payment theretofore of $6 per acre-foot. The controversy between respondent and the group represented by petitioner is of long standing. Various phases of this controversy have been before this court on four different occasions in recent years. (*Henderson* v. *Oroville-Wyandotte Irr. Dist.*, 207 Cal. 215 [277 Pac. 487]; *Dankert* v. *Oroville-Wyandotte Irr. Dist.*, 211 Cal. 87 [293 Pac. 785]; *Henderson* v. *Oroville-Wyandotte Irr. Dist.*, 213 Cal. 514 [2 Pac. (2d) 803]; *Rutherford* v. *Oroville-Wyandotte Irr. Dist.*, 215 Cal. 124 [8 Pac. (2d) 836].) The facts and history of the controversy have been fully set forth in these prior cases and no useful purpose would be fulfilled by restating them in full in this opinion. So far as necessary to this opinion these facts may be summarized briefly as follows:

In 1922 respondent district purchased two public utility water companies, the Palermo Land & Water Company and the South Feather Land & Water Company. For many years prior to 1922, these companies had furnished their customers, one of whom is petitioner herein, with water. Before the purchase of the two utilities could be consummated it was necessary to secure the consent of the Railroad Commission thereto. That commission, after a full hearing, gave its consent to the purchase upon certain enumerated conditions, which conditions were approved and in fact

suggested by the respondent district. So far as pertinent here these conditions were that the lands of certain protesting parties formerly served by the utilities, including the lands of petitioner herein, should not be included within the boundaries of respondent district, but should receive a guaranteed flow of water from respondent, for which water such outside users, after 1928, should not be compelled to pay a rate in excess of that charged the inside users for the use of water. The exact words of the contract of purchase in this respect were as follows: " . . . said (outside) water user shall pay the same charge for water on his land as is paid for water within the . . . District." Another and different rate was provided for the years 1922 to 1928. The parties abided by the terms of this agreement until 1928. Since that time respondent has attempted by one means or another to discriminate between the rates charged inside and outside users. In 1928, the directors of respondent district adopted a resolution fixing the rate to inside users at $5 per acre-foot and to outside users at $7.50 per acre-foot. In *Henderson* v. *Oroville-Wyandotte Irr. Dist., supra,* this court affirmed the decision of the trial court to the effect that the contracts between the outside users and respondent district were valid, and that under them the outside users were entitled to be charged for the use of water a rate no greater than was charged inside users for the use of water. It was also held in that case, that in considering whether the rates between the two classes of users were equal, it was not permissible to take into consideration the special land taxes or assessments paid by the inside users. It was held that the evidence clearly showed that the revenues derived from taxes and assessments levied by the district on inside users were largely used for the purpose of paying the interest on the bonded indebtedness of the district and other expenses incurred by respondent in extending its water system. These charges were specifically held not to be a charge for the use of the water, and for that reason, under the contracts of the parties, could not be considered in determining whether the rates for the two classes of users were equal. It was further held that these charges were not properly or at all chargeable against outside users but could only be charged against

inside users, and that the contracts between the parties were entered into with that in mind.

After the above decision had become final the directors of respondent district adopted a resolution fixing the rate for inside users for the year 1931 at $6 per acre-foot, and $10 per acre-foot for outside users. In *Rutherford* v. *Oroville-Wyandotte Irr. Dist., supra,* it was held that this was in violation of the contract. This court reaffirmed the position that it had taken in the prior case, viz.: That the district, under its contracts, must furnish water to the outside users at the same rate charged inside users.

So far as pertinent to the present controversy, the prior decisions above referred to have clearly established the following three propositions:

1. The contracts between the outside users and respondent district are valid, existing, enforceable obligations.

2. By these contracts respondent district is prohibited from charging outside users for the use of water a rate in excess of that charged inside users for the use of water.

3. The land taxes and assessments levied on the lands of inside users cannot be considered in determining whether the rates charged the two classes of users are the same. Such assessments are not a charge for the use of water but are in addition to such charge, and are chargeable only against inside users.

With these preliminary remarks we turn to the facts of the present controversy. It appears that after the decision in the Rutherford case, *supra,* had become final, on April 7, 1932, the directors of respondent district, by resolution, purported to fix the rates for outside and inside users for the year 1932, as follows:

1. A use charge for both outside and inside users of $6 per acre-foot for water delivered.

2. For all lands both outside and inside the district entitled to water service a stand-by or carrying charge of $2 per acre whether water is actually used or not.

By the terms of the resolution, both the use charge and stand-by charge as to outside users were made payable in advance of service, but as to those users (inside users), where the water charges constitute a prior lien on the property, the charges were not made payable until October 31st.

In this attempt to impose a stand-by or carrying charge on lands both within and without the district, whether such lands actually use water or not, the district purported to act under the provisions of section 55 of the California Irrigation District Act as amended in 1931. (Stats. 1931, p. 246.) It provides: "For any of the purposes of this act, or of any act supplementary hereto, the board of directors of any irrigation district may, in lieu (either in whole or in part) of levying assessments as herein provided, fix and collect rates of tolls or charges for the use of water which may include a stand-by or carrying charge notwithstanding the water is not actually used, or any other public use of which the district is in charge, under such reasonable rules and regulations as the board may prescribe, which may provide, in the case of water for irrigation, that tolls or charges will be payable only in case of the delivery of water in excess of a specified quantity per unit of land."

Petitioner contends that it is in violation of his contract with respondent district to thus impose a stand-by charge on his lands whether water is used or not; that the contract, as interpreted by the prior decisions of this court, permits only a charge for the use of water; that the only lawful charge that can be imposed on petitioner is the "use" charge of $6 per acre; that, in any event, the resolution above mentioned discriminates against the outside users because it requires them to pay in advance while inside users are not required to pay until October 31st. Petitioner has tendered the acre-foot charge of $6 per acre for water furnished to him, and has demanded a receipt in full. Upon respondent district refusing to accept such payment and to issue a receipt in full, petitioner deposited the proper amount in a bank to respondent's order. The answer of respondent district denies that the imposition of the stand-by charge violates the contract between the parties, or violates the previous decisions of this court.

After the answer of respondent district had been filed, the petitioner asked for and received the permission of this court to amend his petition. These amendments clarify, to a considerable extent, the problems herein presented. It is therein alleged that since 1928 respondent district has outstanding bonds of the aggregate face value of $1,054,000; that the interest rate thereon is six per cent per annum,

which amounts to an annual bond obligation of the district of $63,240; that respondent district comprises 24,200 acres, of which only 2,068 acres are receiving water; that heretofore the district has always assessed the land within its borders for land taxes at $100 per acre; that in 1928 and 1929 the directors of the district fixed a land tax or assessment on lands within the district of $2 for each $100 of assessed value or the equivalent of $2 per acre; that in 1930 and 1931 this land tax was fixed at $3 per acre; that after the petition herein had been filed, on September 14, 1932, the directors of respondent district by resolution *reduced this land tax from $3 per acre to 10 cents per acre* for the year 1932; that the revenue to be derived from the land tax at 10 cents per acre will amount to but $2,420 per year, which is far below the bond interest obligations of respondent district. Petitioner further alleges that the imposition of this stand-by charge was designed by the respondent district for the purpose and has the effect of requiring petitioner and the other outside users, under the guise of a stand-by charge, to pay the interest on the bonded indebtedness of respondent district and to pay other expenses incurred by the district in extending its water system. It is contended that this is in violation of the contract between the parties as interpreted by this court in prior decisions. We agree with this contention.

The answer of respondent district to these amendments is most evasive. Respondent district denies that the imposition of the stand-by charge has the effect of requiring the outside users to pay expenses properly not chargeable to them. Respondent district expressly admits passing the resolution lowering the land tax on inside users from $3 per acre to 10 cents per acre and admits, by failing to deny, most of the other allegations of the amendments to the petition.

It is our opinion that respondent district in fixing its rates for 1932, under the guise of a stand-by charge, is attempting to saddle on to the outside users, items of expense not properly chargeable against them, and in direct violation of the prior decisions of this court. Almost the exact point here involved was decided adversely to respondent in *Henderson* v. *Oroville-Wyandotte Irr. Dist., supra*. In that case respondent sought to show that the decision of the

trial court holding that a $7.50 per acre-foot charge for outside users was discriminatory when the inside users' rate was $5, was in fact wrong because inside users, in addition to the water charge, paid also a land tax assessment. This court in no uncertain language held that this land tax could not be considered in determining whether the rates for the two classes of users were equal. At page 532 of that decision it was stated:

"In support of this final contention that the judgments of the trial court confiscate the property of the district, the latter refers to certain evidence given at the trial of these actions which shows, or at least tends to show, that the members of the district are paying more for their water than are the outside users. In fact, it is contended that the members of the district for less than half of the water available and delivered since the acquisition of the two utilities by this district pay more than two-thirds of the actual cost of furnishing such water to the users. This cost of water to the members of the district, however, includes the revenues from taxes and assessments paid by the members of the district in addition to the acre-foot rate charged all water users. The weak link in the district's argument is that the revenues raised by taxes and assessments are not wholly and perhaps not at all used for the purpose of furnishing and delivering water to the users thereof. On the other hand, it clearly appears from this evidence that these revenues are largely used for the purpose of paying the interest on its bonded indebtedness and other expenses incurred by the district in extending its water system. The district comprised 24,200 acres, only 2068 of which were receiving water at the time the district acquired the properties of the two utilities. A portion, the record fails to show just how much, of these 2068 acres within the district receiving water was under the irrigation system of the two utilities prior to the transfer. There were 2757 acres outside the district receiving water from these two irrigation systems at the time of the transfer and after the transfer they continued to receive water from the district. As there were over 20,000 acres in the district without water at the time the district acquired the two utilities, it is apparent that in order to carry out its plans it would be necessary to expend very large sums of money

in securing additional water rights, constructing canals, ditches and laterals, and purchasing rights of way for the same. As to the advisability of making these extensions in the irrigation system of the district the outside users had no voice and with these plans they were not seriously concerned. They would receive only slight and probably no benefit from the large expenditures of money necessary to perfect an irrigation system adequate to the needs of the whole district. It was this burden—this large expense which would be necessary if the district carried out its plans to supply all of the lands of the district with water—that the outside users sought to protect themselves against when it was proposed that the district acquire the properties of the Palermo and South Feather companies. In the light of these facts, we think it may well be doubted whether the members of the district are actually paying more for their water service than those outside the district. At the time of the organization of the district it is apparent that there was considerable diversity of opinion among the landowners residing in the locality where the district was subsequently organized as to whether it was advisable to organize the district, and as to the advisability of having their lands included in the district. The result was, as we have already seen, that the plaintiffs and those whom they represent remained out of the district. Those who consented to become members and have their lands included in the district, it may well be assumed, knew of the plans of the organizers of the district to include therein a large body of land without water with the object and purpose of acquiring additional water rights, which might be brought upon and used upon these heretofore nonirrigated lands. With this knowledge they became members of the district and thereafter the district began to carry out the plans of developing a water system sufficient in capacity to irrigate as far as possible all of the lands in the district. These members of the district are, of course, liable for the expense thus incurred. They stand in an entirely different position from the plaintiffs who decided to remain out of the district and to receive water from the district under the plan outlined above. That those in the district are compelled to meet higher charges for water they receive than the outside users is not surprising. In fact, it must have been contemplated

by them that such would be the result if they became members of the district, and the district should put into execution the plan of extending its water system to all the irrigable lands in the district. The fact that the members of the district under these circumstances are required to pay higher charges for the water used than the outside users does not to any extent amount to a confiscation of the property of the district. The two classes of water users stand in entirely different positions regarding their respective rights to have water supplied to them by the district. There is in our opinion no merit in the contention of the district that the judgments herein confiscate the plants or property of the district.''

Applying the above reasoning to the facts of this case, it necessarily follows that the amount chargeable against the inside users in extending the works of the district cannot be considered in determining whether the rates charged the two classes of users are equal. Such expense is not properly a charge for the use of water and cannot, for that reason, be included in the charge made against outside users. Under the prior decisions of this court, inside users and outside users must be charged the same rate for the use of water. Expenses not connected with the use of water borne by the inside users cannot be used in determining whether the rates are equal. Such charges must be borne solely and entirely by the inside users who solely benefit therefrom, and are in addition to the charge to inside users for the use of water. We do not find it necessary to pass on the validity of section 55 of the Irrigation District Act, *supra*, purporting to permit irrigation districts to charge a stand-by charge. We are well aware of the many decisions permitting utilities to include such a charge in fixing their rates. Whether such a charge may be legally made by irrigation districts will be determined in a proper case. Assuming the validity of that statute as applied to inside users, the question remains whether such a charge may be imposed on outside users, when the charge is obviously to pay expenses already held to be not chargeable against outside users. Changing the name of the charge cannot affect the substantive rights of the parties. By the very terms of section 55 it is specifically provided that the stand-by charge may be imposed ''in lieu (either in whole or in part) of

levying assessments". The uncontradicted facts of this case necessarily indicate that the purpose of the two charges is identical. In addition the statute itself so provides. The expression "in lieu of" necessarily means "instead of", "in place of", or "in substitution for". (*Irwin* v. *McDowell*, 4 Cal. Unrep. 329 [34 Pac. 708]; *National Sewing Machine Co.* v. *Willcox & Gibbs Sewing Machine Co.*, 74 Fed. 557; *Lamb* v. *Milliken*, 78 Colo. 564 [243 Pac. 624]; *S. E. Hendricks Co.* v. *Thomas Publishing Co.*, 242 Fed. 37; *Southland Life Ins. Co.* v. *Hopkins*, (Tex. Civ. App.) 219 S. W. 254.) Since it has already been held that the land tax or assessment is chargeable solely against inside users and cannot be considered in determining whether the rates are equal, it follows that any charge "in lieu" thereof, cannot be so considered. To permit such a subterfuge would be to close our eyes to the necessary effect of such a ruling, and would permit respondent district to do something indirectly which it has already been held it cannot do directly. The prior decisions of this court leave no room for interpretation. These cases have definitely settled the point that no portion of the expenses incurred by the district in expanding its water system can be charged against the outside users. The land assessment has already been held to be in that category. Changing the name of that charge, when the purpose and effect of such levy remains the same, in no way changes the result.

The writ heretofore issued is made peremptory.

Seawell, J., Thompson, J., Shenk, J., Langdon, J., Preston, J., and Waste, C. J., concurred.