[Civ. No. 16224.   First Dist., Div. Two.   Mar. 23, 1955.]

MAYBELLE BURKE CAREY, Appellant, v. RETIRE-
MENT BOARD OF SAN FRANCISCO et al., Respond-
ents.

Taheny & Taheny and John Taheny for Appellant.

Dion R. Holm, City Attorney, and Bernard J. Ward, Deputy City Attorney, for Respondents.

KAUFMAN, J.—This is an appeal from a judgment of the Superior Court in and for the County of San Francisco denying a petition for a peremptory writ of mandate in a proceeding brought to compel the Retirement Board of the City and County of San Francisco to pay a widow's pension under section 169 of the city charter. Petitioner has been receiving benefits from respondent since the death of her husband under the provisions of section 168.3 of said charter, but contends that she has the right to receive a pension under section 169, which in her case would be a larger sum than that which she is now receiving. Respondent contends that section 168.3 of the charter, which became effective in 1947, superseded the provisions of section 169 applicable to employees of the fire department in the class to which her husband belonged, and that she has no right to a pension under section 169.

Petitioner's husband, Leo J. Carey joined the fire department in 1927, and was at all times thereafter a member until his death on March 18, 1948, which resulted from an injury sustained in line of duty on March 16, 1948. He became a member of the retirement system on January 8, 1932, under the provisions of section 169 of the charter. If Carey had lived, he would have attained the age of 55 years on September 8, 1948, at which time he would have been eligible for a pension.

At the time of his death Carey held the rank of lieutenant which paid a salary of $345 monthly. In July 1948, the salary for that rank was raised to $370 per month, in July 1951, to $395, and since July 1952 has been $436 per month.

On March 25, 1948, the respondent board presented appellant with a form of application for pension entitled "Applica-

tion for allowance—Death In Line of Duty." This application form referred generally to the "Charter and ordinance provisions governing the Retirement System," but made no reference to any specific sections thereof. However, appellant's verified petition alleges that "At the time said application was filed and at all times thereafter until the 8th day of September, 1952, petitioner was informed by said Retirement Board, and by the officers, agents and employees thereof, that she had no right to a pension under any provisions of the Charter other than under section 168.3, and was further informed that section 169 had been superseded by said section 168.3." This allegation is not denied in the answer.

Following the filing of appellant's application, the respondent made payments to her at the rate of $345 monthly, the salary the deceased was receiving at the time of his death, until September 7, 1948, the date on which he would have been eligible for retirement, and after that date, $162.64 monthly, an amount equal to the retirement allowance the deceased would have received if he had retired on that date, as provided in section 168.3.

In her opening brief appellant asserts that she was not informed and did not know that she had a right to a pension under either section 168.3 or 169 and she so testified at the hearing. However, her allegation in the verified petition shows that she was informed that she had no right to a pension under section 169 or any other section of the charter except section 168.3.

The trial court denied the writ on two grounds: First, that section 168.3 supersedes the payment provisions contained in section 169 under which petitioner now claims, and second, that the action is barred under section 338 of the Code of Civil Procedure, having been instituted more than four years and six months after the alleged wrong was committed.

The principal question in the case is whether the adoption of the amendment to the charter, section 168.3, in 1947, supersedes the provision in section 169 of the charter which pertains to pensions for widows of firemen who die from injury or sickness resulting from performance of duty with the department. Section 169 relates to pensions and retirement of members of the fire department. Section 169(b) provides in part as follows:

"(b) The family of any member of the fire department

who shall die as a result of any injury received during the performance of his duty, or from sickness clearly, unmistakably and directly caused by and resulting from the discharge of such duty, or while eligible to a pension on account of years of service in the department, or who has served twenty consecutive years in the department and attained the age of fifty-five years, shall receive the following benefits:

"First, should the decedent leave a widow to whom he was married prior to the date of the injury resulting in death, his widow shall, as long as she may live and remain unmarried, be paid a monthly pension equal to one-half of the salary attached to the rank held by the decedent at the time of his said injury, provided, however, that should said widow die, leaving a child or children under the age of sixteen years, said pension shall continue to such child or children collectively until the youngest child arrives at the age of sixteen years."

Section 168.3, entitled Pension Provisions—Dependents of Members of Fire and Police Departments Killed in Line of Duty, provides as follows:

"Section 168.3. If a member of the fire or police departments, as defined in the charter for the purposes of the retirement system, or a member of the salvage corps in the fire department, or any person employed by the city and county to perform duties now performed under the titles of pilot of fireboats, marine engineer of fireboats, or marine fireman of fireboats, all of whom are hereafter designated as members, shall die before or after retirement as a result of an injury received in, or illness caused by the performance of his duty, a monthly allowance, *in lieu of any allowance payable under any other section of the charter or by ordinance, shall be paid,* beginning on the date next following the date of death, to his surviving wife throughout her life or until her remarriage. If the member, at the time of death, was qualified for service retirement, but had not retired, the allowance payable shall be equal to the retirement allowance which the member would have received if he had been retired for service on the day of death, but such allowances shall not be less than one-half of the average monthly compensation earnable by said member during the three years immediately preceding death, and if he had retired prior to death, the allowance payable shall be equal to the retirement allowance of the member. If death occurs prior to qualification for service retirement, the allowance payable shall

be equal to the compensation of said member at the date of death, until the date upon which said member would have qualified for service retirement, had he lived and rendered service without interruption in the rank held by him at death, and after said date the allowance payable shall be equal to the retirement allowance said member would have received if retired for service on said date, based on the average monthly compensation he would have received during the three years immediately prior to said date, had he lived and rendered service as assumed, but such allowance shall not be less than one-half of such average monthly compensation. . . .

"Benefits provided under this section *shall be in lieu of all benefits payable under other sections of the charter upon death of such member resulting from an injury received in, or illness caused by the performance of duty,* except the five hundred dollar benefit payable upon death after retirement." (Emphasis added.)

Appellant contends that section 168.3 is intended to give the widow of a fireman who dies from injury in line of duty the right to apply for a pension thereunder, but that it did not repeal her right to apply for a pension under section 169, and since it was not intended that she should receive both pensions, it appropriately provides that the widow's pension under section 168.3 shall be "in lieu of any allowance payable under any other section of the charter." It is argued that it would be idle to provide that an allowance shall be in lieu of any other allowance payable under another section if the very section that makes such reference has destroyed and repealed all other provisions for such allowance. It is senseless, appellant says, to refer to an "allowance payable" under another provision if the section referring thereto has repealed the other provision.

The purpose of section 168.3 was to enlarge the rights of widows of firemen killed in line of duty, as is shown by the argument supplied to the voters at the time section 168.3 was adopted. It stated that the amendment would correct the inadequacy of the pension system which was brought to light in a recent fire during which four members of the department lost their lives. But the interpretation of this amendment as a repeal of section 169(b), rather than as a supplementary provision, would in the cases of firemen close to the retirement age, result in a lesser pension for their widows when they are killed in line of duty, than would be

received if they lived to the retirement age and died from a cause not connected with their service.

Appellant maintains that the expression "in lieu of all benefits payable under other sections of the charter" and "in lieu of any allowance payable under any other section of the charter or by ordinance" cannot be construed as a repeal of that part of section 169 pertaining to firemen whose deaths result from injury in line of duty. She notes that section 171.1.6 of the charter enacted in 1949, provides that that portion of any allowance payable because of death or retirement of any member which is provided by contributions of the city and county, shall be reduced by the amount of any benefits, other than medical, payable under the Workmen's Compensation Insurance and Safety Law of the State of California because of the injury or illness resulting in death or retirement. "Such portion which is paid because of death or retirement which resulted from injury received in or illness caused by performance of duty, shall be considered as *in lieu of all benefits, other than medical benefits, payable to* or on account of such person under said law of the state of California and shall be in satisfaction and discharge of the obligation of the City and County to pay such benefits." Here, appellant says, it is clear that both benefits shall not be collected, but it would be ridiculous to say that the "Workmen's Compensation Law is impliedly repealed in respect to firemen who meet death in line of duty." However, the Workmen's Compensation Law is one imposed by the state, and it is well settled, as appellant admits, that a municipality cannot through its charter abrogate the state law in this regard. It is pointed out in *Larson* v. *Board of Police etc. Comrs.,* 71 Cal.App.2d 60, 63 [162 P.2d 33], that the payment of workmen's compensation and the allowance of pension benefits are supported upon entirely different principles. Under the above quoted provision of the charter it is clear that the portion paid because of death or retirement on account of injury is paid *in lieu of,* or in place of, all other benefits and is in satisfaction of the city's obligation under the state law.

However, the obligation to pay a pension arises out of the municipal charter itself. The question is, then, whether the amendment which deals with exactly the same subject as that covered by section 169(b), but adds certain other classes thereto, such as police officers, fireboat pilots and salvage corps personnel, leaves the earlier section intact,

creating alternative methods of compensation for the widows of these firemen. The language is very clear that only one pension is *payable* by the city and county. Appellant interprets this language to mean that only one pension is *collectible*, but that either one or the other may be paid. ▮ There is no doubt as to the meaning of the phrase "in lieu of." It means "instead of," "in place of," "in substitution for." (Webster's · Internat. Dict., 2d ed.; *Rutherford* v. *Oroville-Wyandotte Irr. Dist.*, 218 Cal. 242 [22 P.2d 505].) Therefore, section 168.3 clearly states that in the case of death of firemen, policemen, and certain other classes of employees, dying from injury received in line of duty, this pension *shall* be paid to the widows by· the city *instead* of any other allowance or pension provided for by any *other* charter provision or ordinance. It is clearly obligatory on the city to pay this particular pension. ▮ Such language makes the language of the earlier section 169(b) in conflict therewith, and it must be held to be irreconcilable and therefore impliedly repealed.

▮ It is true, as ·appellant says, that repeal by implication is not favored. (*Fay* v. *District Court of Appeal*, 200 Cal. 522 [254 P. 896].) ▮ If two sections purport to cover the very same persons and situations, they will, of course, be so construed to maintain the integrity of both if it is possible that they may subsist together. (*Hammond* v. *McDonald*, 32 Cal.App.2d 187 [89 P.2d 407].) ▮ But in the present case, the later provision covers the entire class of persons to whom the earlier provision applied, comprehends exactly the same situations, and provides in detail for the calculation of different allowances. It therefore must be held that they are in conflict with each other, rather than that they create an option on the part of the recipient of a pension.

Respondent calls attention to the fact that where an option or election is granted under the charter, the language clearly so provides. In section 158.1 dealing with retirement it is provided that election officers otherwise eligible under the act shall have the *option* to become members of the retirement system which option is to be exercised in writing not later than 90 days after the effective date of the act. The fact that there is an option is clearly set forth, as well as the method of exercising it, and the time in which it is to be exercised. None of these elements is present in section 168.3. Other charter sections providing for the exercise of

options concerned with the retirement system are sections 158.2, 158.3, 165.2, 166 and 169. Appellant's only answer to this argument is that in section 171.1.6 the benefits of Workmen's Compensation are alternative. As noted above, the Workmen's Compensation Act is a state law, and we are not dealing with a provision imposed by another section of the same charter.

Sections 169 and 171 of the charter relate to two classes of firemen, section 169 to those who were in service before 1932, and section 171 to those who joined the department thereafter. If it were intended that the widows of older firemen were not to come under the provisions of section 168.3, undoubtedly the new provision would have been so drafted. If this had been done, then widows of firemen who had served approximately 15 years at the time this section was enacted would not be entitled to the husband's full pay for the next five years, but would receive half of his salary during that time and thereafter. In such cases the new provisions would probably be more advantageous. In cases such as the present, where the deceased was within a few months of retirement, section 169(b) would be more advantageous.

■ However, while there is a continuing right to a pension (*Dryden* v. *Board of Pension Comrs.*, 6 Cal.2d 575, 581 [59 P.2d 104]), a pensioner does not have a right to a specific sum, hence the amount may be reasonably increased or decreased. (*Carr* v. *Fire Com.*, 30 Cal.App.2d 208 [85 P.2d 959].) ■ Any time before the contingency happens upon which a right to a pension vests, the law granting such right is subject to alteration or repeal. (*Jordan* v. *Retirement Board*, 35 Cal.App.2d 653, 657 [96 P.2d 973].)

■ We hold that the trial court was correct in its conclusion that section 168.3 now provides the sole method of compensation for widows of firemen who die from injuries received in line of duty.

The trial court also decided that the cause of action, if any had existed, would have been barred by section 338 of the Code of Civil Procedure. Appellant contends that the statute would begin to run from August 1952, instead of from May, 1948, since the amount paid appellant under section 168.3 was sufficient to cover amounts which would have been due under section 169 until August 1952. This action was filed in October 1952. It is true that *Dryden* v. *Board of Pension Comrs.*, 6 Cal.2d 575 [59 P.2d 104], held that the right to a pension is a continuing right, and that

the only installments of the pension which were barred were those which fell due three years before the filing of the action. However, where the right to a pension is denied, then the case of *Dillon* v. *Board of Pension Comrs.*, 18 Cal.2d 427 [116 P.2d 37, 136 A.L.R. 800], is applicable. In that case after denial of the pension the widow waited more than three years before filing her petition for a writ of mandamus. It was there held that the limitation on the right to bring an action in mandamus begins to run when the right first accrues, and claimant has no remedy by mandamus if more than three years have elapsed from the time the right first arose, exclusive of the time the matter was under consideration by the board.

While appellant claims she was misled by the Retirement Board into believing that she had no right to a pension except under section 168.3, still her verified petition shows that at the time she signed the application she was advised that she had no right to a pension under any other provision than section 168.3, and that she was further informed that section 169 had been superseded by section 168.3. █ This is an admission that she knew more than three years prior to this proceeding that the right to a pension under section 169 was denied by the board. The Dillon case would therefore appear to be applicable to this situation. The trial court was correct in deciding that the action was barred by section 338 of the Code of Civil Procedure.

In view of the foregoing, the judgment must be and is hereby affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied April 22, 1955, and appellant's petition for a hearing by the Supreme Court was denied May 18, 1955.