[L. A. No. 17829. In Bank. Dec. 23, 1942.]

SAMUEL H. HOYT et al., Appellants, v. BOARD OF CIVIL SERVICE COMMISSIONERS OF THE CITY OF LOS ANGELES et al., Respondents.

Arthur Lasher for Appellants.

Joseph T. Curley and Marvin C. Hix, as Amici Curiae, on behalf of Appellants.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and George William Adams, Marvin Chesebro, and Louis A. Babior, Deputies City Attorney, for Respondents.

GIBSON, C. J.—This is an action for declaratory relief in which plaintiffs sought a construction of section 125(b) of the Los Angeles City Charter. Plaintiffs appeal from a judgment rendered against them in the trial court,

In support of the trial court's judgment in their favor, defendants contend that an action for declaratory relief is not available against a municipal corporation in this state. For this proposition they rely upon the recent cases of *Bayshore San. Dist.* v. *San Mateo County,* 48 Cal.App.2d 337 [119 P.2d 752], and *Irvine* v. *Sacramento, etc. Drainage Dist.* 49 Cal.App.2d 707 [122 P.2d 320]. These cases, which tend to support defendants' position, were not brought to the attention of this court by a petition for hearing, and thus the present case is the first in which we have been called upon to examine the soundness of the rule enunciated therein.

There are many cases in which declaratory relief has been sanctioned in this state with respect to municipal corporations and counties, or agencies thereof. (*Henderson* v. *Oroville-Wyandotte Irr. Dist.,* 207 Cal. 215 [277 P. 487]; *Skidmore* v. *County of Amador,* 7 Cal.2d 37 [59 P.2d 818]; *Villain* v. *Civil Serv. Com.,* 18 Cal.2d 851 [117 P.2d 880]; *La Franchi* v. *City of Santa Rosa,* 8 Cal.2d 331 [65 P.2d 1301, 110 A.L.R. 639]; *Skalko* v. *City of Sunnyvale,* 14 Cal.2d 213 [93 P.2d 93]; *Andrews* v. *City of Piedmont,* 100 Cal.App. 700 [281 P. 78]; *Greenfield* v. *Bd. of City Plan. Commrs.,* 6 Cal. App.2d 515 [45 P.2d 219]; *cf. Banks* v. *Civil Service Com.,* 10 Cal.2d 435 [74 P.2d 741].) The remedy has also been considered available to such bodies as plaintiffs. (See *City of Alturas* v. *Gloster,* 16 Cal.2d 46 [104 P.2d 810]; *City of Oakland* v. *Brock,* 8 Cal.2d 639, 643 [67 P.2d 344]; *cf. State ex rel. Smrha* v. *General Am. Life Ins. Co.,* 132 Neb. 520 [272 N.W. 555].) In the Bayshore case, *supra,* the District Court of Appeal held that the action for declaratory relief which is authorized with respect to "persons" in Code of Civil Procedure, sections 1060 et seq., should not be interpreted to apply to political subdivisions of the state. The court conceded that its conclusion was in conflict with the cases which we have cited above, but it indicated that those cases were in error because they had not considered the principles of statutory construction upon which its conclusion was based. (See *Bayshore Sanitary Dist.* v. *San Mateo, supra,* p. 340.) The conflict thus created in the law relating to declaratory judgments requires us to examine the problem at some length in order to terminate the uncertainty which now exists in this field.

Code of Civil Procedure, section 1060, which authorizes actions for a declaratory judgment, provides: "Any *person* interested under a deed, will or other written instrument, or under a contract, or who desires a declaration of his rights or duties with respect to *another* . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an action in the superior court for a declaration of his rights and duties in the premises. . . . "

■ In the Bayshore case, *supra*, after noting that the statute authorizes the bringing of such an action by one "person" against "another" person, the court relied upon a general doctrine of statutory construction in concluding that the word "person" should not be held to include any political subdivision of the state in the absence of an express indication that such was the legislative intent. This general rule of statutory construction, which is supported by numerous cases, is founded upon the principle that statutory language should not be interpreted to apply to agencies of government, in the absence of a specific expression of legislative intent, where the result of such a construction would be to infringe sovereign governmental powers. (See *Butterworth* v. *Boyd,* 12 Cal.2d 140, 150 [82 P.2d 434, 126 A.L.R. 838]; *Balthasar* v. *Pacific Elec. Ry. Co.,* 187 Cal. 302, 305-308 [202 P. 37, 19 A.L.R. 452]; *Bayshore Sanitary Dist.* v. *San Mateo, supra,* p. 339, and cases cited therein; 23 Cal.Jur. 625 et seq.) Where, however, no impairment of sovereign powers would result, the reason underlying this rule of construction ceases to exist and the Legislature may properly be held to have intended that the statute apply to governmental bodies even though it used general statutory language only. (See *State of Calif.* v. *Marin Mun. W. Dist.,* 17 Cal.2d 699, 704 [111 P.2d 651]. ■ For reasons set forth hereafter we think that the latter rule is the one which applies under the facts of the present case.

■ The practical construction which this statute has received since its enactment in 1921, as is indicated by cases heretofore cited, has sanctioned the use of declaratory judgment procedure where political subdivisions of the state were involved. The practice thus established is entitled to consideration and should not be overturned unless clearly unsupportable. (*Cf. Golden Gate Bridge, etc. Dist.* v. *Felt,* 214 Cal. 308 [5 P.2d 585]; see (1942) 30 Cal.L.Rev. 682, 685.)

It has been held repeatedly that actions for declaratory relief involve matters of practice and procedure only and are not intended in any way to enlarge the jurisdiction of courts over parties and subject-matter. (*Cf. Aetna Life Ins. Co.* v. *Haworth,* 300 U.S. 227, 240 [57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000]; *Nashville, etc. Ry.* v. *Wallace,* 288 U.S. 249, 264 [53 S.Ct. 345, 77 L.Ed. 730]; *Guaranty Trust Co. of New York* v. *Hannay,* (1915) 2 K.B. 536, 563; see Anderson, Declaratory Judgments (1940), p. 206; Borchard, Declaratory Judgments (2d ed. 1941), p. 231.) Such statutes are intended to provide an additional procedure for utilizing the existing jurisdiction of the courts. Similarly, it has been pointed out that this procedure is not intended to alter or modify the principles of sovereign immunity in any way. Declaratory judgment statutes do not authorize a determination of liability against the sovereign outside the terms of statutory provisions accepting liability and subjection to suit. (See Borchard, *op. cit., supra,* pp. 373-374.) Where governmental bodies are already subject to suit, however, it is clear that procedural statutes may be made applicable to such bodies without causing any interference with rights of sovereignty. (*Cf. Superior Oil Co.* v. *Superior Court,* 6 Cal.2d 113, 118 [56 P.2d 950].) If an acceptance of liability and subjection to suit on the part of a sovereign body is found elsewhere in the statutes of the state and the declaratory judgment procedure is not barred by the provisions of the waiver of immunity, we think it clear that a determination of the legal issue in an action for declaratory relief in no way constitutes an impairment of governmental sovereignty.

Insofar as municipal corporations are concerned, no infringement of sovereignty results from the fact that they may be compelled to answer as defendants in an action for declaratory relief. Municipal corporations in this state are generally empowered to sue and be sued, either by the provisions of the Municipal Incorporation Act or by provision of charter. (*Cf.* Stats. 1883, p.93, Deering's Gen. Laws, 1937, Act 5233, §§ 19, 300, 500, 600, 750, 850; Los Angeles Charter (1937), art. I, § 2(2), Stats. 1925, p. 1028; 18 Cal.Jur. 1121-1122.) This subjection to suit does not, of course, constitute an acceptance of liability in all situations in which individual defendants may be liable, and the extent of liability is dependent upon statutes governing particular situations. (See

*Douglass* v. *City of Los Angeles*, 5 Cal.2d 123, 131 [53 P.2d 353].) Since the declaratory judgment statute deals with procedure only, however, there is no reason why the statute should not be interpreted so as to authorize the determination by that procedure of any issue which might be determined against a municipal corporation in an ordinary action at law or in equity.

In the recent case of *Otis* v. *City of Los Angeles*, 52 Cal. App.2d 605 [126 P.2d 954], where the court reached a similar conclusion insofar as municipal corporations were concerned, it was suggested that a distinction might be made between such corporations and counties. The inference of the court was, of course, that the Bayshore rule might be sound as applied to county governments, even though it could not be applied to municipal corporations. No sound basis for such a distinction exists insofar as actions for declaratory relief are concerned. From an early date our statutes have provided that counties are to be treated as corporate bodies having power to sue and be sued. (Pol. Code, §§ 4000, 4003, Stats. 1854, p. 45.) As is the case with municipal corporations, therefore, no infringement of sovereignty can be predicated upon the fact that counties may be called upon to defend themselves in court. The application to such bodies of the procedure for declaratory judgment merely makes available an additional method of determining issues of law relating to county governments. Such issues are often determined at present in actions where counties appear as parties defendant. (*Cf. Southern Calif. Roads Co.* v. *San Luis Obispo County*, 4 Cal.2d 220 [48 P.2d 34]; *Colusa County* v. *Glenn County*, 117 Cal. 434, 436 [49 P. 457]; *Price* v. *County of Sacramento*, 6 Cal. 254; see 7 Cal.Jur. 556.) Since the declaratory judgment procedure can not be interpreted so as to extend the jurisdiction of the courts or broaden the liability which may be imposed upon governmental bodies, no impairment of sovereignty will result from interpreting the word "person" in Code of Civil Procedure, section 1060, to include counties as well as municipal corporations. The United States Supreme Court said in a recent case, commenting upon the suggestion that the word "person" could never include a governmental body, " . . . 'there is no hard and fast rule of exclusion. The purpose, subject matter, the context, the legislative history, and the executive interpretation of the statute

are aids to construction which may indicate an intent, by use of the term, to bring state or nation within the scope of the law.' '' (*Georgia* v. *Evans*, 316 U.S. 159 [62 S.Ct. 972, 974, 86 L.Ed. 1346] see, also, *United States* v. *Cooper Corp.*, 312 U.S. 600, 604 [61 S.Ct. 742, 85 L.Ed. 1071].)

The conclusion reached herein is not inconsistent with the line of cases cited in *Bayshore Sanitary Dist.* v. *San Mateo, supra.* In the cases there relied upon, general statutes were sought to be applied against governmental bodies where a clear invasion of sovereignty would have resulted. Thus, in *Whittaker* v. *County of Tuolumne*, 96 Cal. 100 [30 P. 1016], the plaintiff attempted to utilize the provisions of Code of Civil Procedure, section 1050, to adjudicate questions involving the existence and extent of a money liability asserted by the county to be due it under a tax statute. In other cases an attempt was made to utilize general statutory provisions in order to adjudicate the issue of title to land where governmental bodies were involved. (*Cf. Newcomb* v. *City of Newport Beach*, 7 Cal.2d 393, 404 [60 P.2d 825]; *Berton* v. *All Persons*, 176 Cal. 610, 617 [170 P. 151]; *State* v. *Royal Consolidated Mining Co.*, 187 Cal. 343, 346 [202 P. 133].) The holding that such statutes could not be utilized against sovereign bodies in the absence of a specific expression of legislative intent is consistent with the principles set forth herein. A different rule is applicable in the present case because no invasion of sovereignty is involved. Insofar as the cases of *Bayshore Sanitary Dist.* v. *San Mateo, supra,* and *Irvine* v. *Sacramento, etc. Drainage Dist., supra,* are contrary to the conclusions expressed herein, those cases are hereby disapproved. The present action for declaratory relief was instituted to obtain an interpretation of the Los Angeles Charter and does not impose liability of any kind upon the city. The action is one which can properly be maintained, therefore, under the provisions of Code of Civil Procedure, section 1060 et seq.

 This action, which was tried upon stipulated facts, involves the construction to be placed upon section 125(b) of the Los Angeles City Charter, which became effective on May 15, 1933. That section provides: ''In addition to all other matters, the board [of civil service commissioners] shall by its rules provide for: . . . (b) The establishment in each class in each office, department or bureau of the City or major

division established in and by a department having control of definite revenues and funds of a reserve list which shall consist of the names of those persons who have been theretofore regularly appointed to, and have served beyond the probationary period in or have been regularly promoted to a position in such class and *have been suspended from their positions since January 1, 1928,* for causes other than personal delinquency, whether for lack of funds, lack of work, abolishment of position or otherwise; provided, that any person in the classified civil service who has served therein since January 1, 1928, and was suspended for causes other than for personal delinquency, shall be entitled upon his written request therefor, to have his name placed upon the reserve list in each such class-group in which he was regularly appointed and served beyond the period of probation and from which class he was *suspended prior to January 1, 1928*. Each person whose name appears on the reserve list, until regularly restored to a position in his class . . . shall be certified for appointment, as in this section provided for, to a position in his class . . . ; *provided, that after this section takes effect, the name of any person, except as in this section provided for, who has been out of the service of the city for more than five years shall be permanently stricken from the reserve list by the board*. [Italics ours] . . . '' In the exercise of the rule making power conferred upon it by this section, the board adopted rule XIX, section 3, providing: ''Names of persons shall be stricken from the reserve or reemployment lists when said persons have been out of the employ of the City five (5) years.''

Plaintiffs were appointed to positions in the office of the city engineer prior to 1926 and were suspended from employment in 1932 by reason of lack of work, lack of funds and abolishment of positions. Under the provisions of section 125(b) of the charter, plaintiffs automatically became entitled to positions upon the reserve list since they were suspended from their employment for reasons other than personal delinquency ''since January 1, 1928.'' In 1937 the defendant commission, acting under its interpretation of the charter provision, set forth above, struck the name of each of the plaintiffs from the reserve list and thereafter refused to restore plaintiffs' names to the list. Plaintiffs contend that the defendant board had no authority to strike their names from

the reserve list, and that the rule adopted by the board is not consistent with the provisions of the charter.

The problem involved concerns the interpretation to be placed upon the five-year period prescribed by the charter during which suspended employees are to be maintained on a reserve list. The position of the Board of Civil Service Commissioners is indicated by the action taken in this case, and the rule adopted by it. Plaintiffs contend that the five-year limitation should not be given any operative effect whatever prior to the date the charter provision became effective, that is, May 15, 1933, and that any employee of the city who was suspended for causes other than personal delinquency prior to May 15, 1933 (whether before or after January 1, 1928) is entitled to remain on a reserve list indefinitely, or until reappointment to a position in his class. Since plaintiffs were suspended in 1932, they argue that the five-year limitation does not apply to them and that they are still entitled to a position on the reserve list of their respective departments. Defendants point out the unreasonable consequences which would follow from such an interpretation of the charter provision. Thus, plaintiffs apparently assert their right to remain on the reserve lists indefinitely, whereas an employee suspended slightly over a year thereafter would be automatically removed from the reserve list at the expiration of the five-year period. In this connection it should be noted that plaintiffs' chief ground for attack upon the interpretation adopted by the board is that it produces illogical results. The trial court held that the action of the Board of Civil Service Commissioners was legally taken in accordance with the contemporaneous administrative construction of section 125 (b) which was consistently followed thereafter.

Decisions in this state and elsewhere have recognized that, although the courts will ordinarily follow a contemporaneous administrative construction of a statute which is reasonably susceptible of more than one interpretation, such a construction cannot be followed where it is clearly erroneous. (See *Bodinson Mfg. Co.* v. *California E. Com.,* 17 Cal.2d 321, 326 [109 P.2d 935] ; *People* v. *Southern Pacific Co.,* 209 Cal. 578, 594, 595 [290 P. 25] ; *Riley* v. *Thompson,* 193 Cal. 773, 778 [227 P. 772] ; *Hodge* v. *McCall,* 185 Cal. 330 [197 P. 86] ; *United States* v. *Philbrick,* 120 U.S. 52, 59 [7 S.Ct. 413, 30 L.Ed 559].) Plaintiffs' contention, which was rejected by the

trial court, is that the provisions of section 125(b) of the Charter are violated by the administrative construction placed upon it, and that the interpretation of the board cannot be followed. The interpretation suggested by plaintiffs, however, does not seem to us to be so clearly correct, and that of the board so clearly wrong, that we are willing to depart from the administrative construction which has been applied consistently in these cases since the enactment of the charter provision.

In seeking to prove that the administrative construction adopted by the board is wrong, plaintiffs rely upon two phrases in section 125(b). The first is the provision that ''after this section takes effect'' the name of any person who has been out of the service of the city for more than five years must be struck from the reserve list. Plaintiffs argue that the phrase ''after this section takes effect'' should be interpreted to relate to the entire provision for a five-year period of limitation. This conclusion does not follow from the grammatical construction of the charter provision which is susceptible of the interpretation that it is the striking of the employee's name which is to take place after the section becomes effective. Plaintiffs' conclusion is based, rather, upon the illogical results which are said to follow from such an interpretation. Thus, it is contended, an employee who was suspended prior to May 15, 1928 (and was thus automatically entitled to a position on the reserve list under section 125(b)), would have his name struck from the reserve list the day after the charter provision became effective on May 15, 1933. It may be conceded that it would serve no useful purpose to put an employee's name on a reserve list one day, only to have it struck therefrom the next, but we do not agree that such a result compels the conclusion which plaintiffs advance. Plaintiffs' interpretation, which requires that any employee suspended before May 15, 1933, be entitled to a position on the reserve list indefinitely, seems to us far more unreasonable than the results which follow from the interpretation of the board. Furthermore, it must be borne in mind that under the rules of the board which existed prior to 1933, a reserve list was maintained upon which employees were permitted to remain for a five-year period. Thus, any employee whose name was subject to being struck from the list within some shorter period than five years after May 15, 1933, had already main-

tained a position upon a reserve list for the first portion of the five-year period under the older rules.

The second phrase in section 125(b) upon which plaintiffs place reliance is the exception to the operation of the five-year limitation. The charter provision states: " . . . the name of any person, *except as in this section provided for,* who has been out of the service of the city for more than five years shall be permanently stricken from the reserve list by the board. . . . " It is plaintiffs' position that some meaning must be given to this exception and that the only possible meaning is that the persons specifically mentioned in section 125(b) were intended to be excepted, that is, those suspended prior to January 1, 1928, who worked for the city thereafter, and those suspended after January 1, 1928, but before the charter provision became effective. This results in exempting from the five-year period of limitation all city employees who were suspended for causes other than personal delinquency prior to the effective date of the charter provision. The unreasonable consequences of this interpretation have already been referred to, but plaintiffs contend that no other result is possible if any meaning whatever is to be ascribed to the exception here involved. We find no such unfortunate compulsion, however, for the exception can be given meaning without following plaintiffs' argument to its ultimate conclusion. Thus, under the language of section 125(b) a city employee suspended for causes other than personal delinquency prior to January 1, 1928, would be entitled to a position upon the reserve list if he so requested and if he served in the classified civil service after January 1, 1928. If, for example, such an employee were suspended in 1926, remained out of the service of the city for six years and then served in the classified civil service for a brief period in 1933, he would be entitled to remain upon the reserve list for a full period of five years and his name could not be struck from the list despite the fact that he had been out of the service of the city for more than five years between 1926 and 1932. The language "except as in this section provided for" has the effect of preserving for such an employee the intended protection of the provision, that is, the maintenance of his name upon a reserve list for a five-year period after the date of his last service for the city.

It is our conclusion, therefore, that the trial court was cor-

rect in following the administrative interpretation placed upon section 125(b). Plaintiffs' additional request for a declaration that the board is under a duty to restore them to the register of eligibles for the positions from which they were suspended need not be considered at length. Since we have held that plaintiffs were lawfully separated from the service of the city by the striking of their names from the reserve list, it follows that they cannot assert a right at the present time to be restored to the register of eligibles in view of rule XII of the board, adopted pursuant to section 110 of the Charter. Section 3 of that rule provides: ''The name of any person who has been separated from the service of the city for more than three years, shall not be restored to the Register of Eligibles.''

The judgment is affirmed.

Shenk, J., Curtis, J., Edmonds, J., and Carter, J., concurred.

TRAYNOR, J.—I concur in the judgment. In my opinion the applicability of an act of the legislature to the state or its political subdivisions presents a question in each case of legislative intent rather than infringement of sovereignty. (*State of California* v. *Marin Municipal Water District*, 17 Cal.2d 699, 704 [111 P.2d 651].) In determining that intent, there is, as the court stated in *Georgia* v. *Evans*, 316 U.S. 159 [62 S.Ct. 972, 86 L.Ed. 1346], no hard and fast rule but there are several aids to construction. The significant facts that are aids to construction in the present case are: under state statutes and the charter of the city of Los Angeles the city can sue and be sued in cases of this kind in ordinary actions in law or equity subject to the provisions of the Code of Civil Procedure governing such actions; no charter or other provision expressly or impliedly precludes the determination of issues such as those here involved under the declaratory judgment procedure provided in section 1060 of that code; the numerous cases in which declaratory relief has been invoked by and against municipal corporations have established a practice that must be given great weight in the interpretation of the act.